No. 2--99--0366 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lake County

) 

Plaintiff-Appellee, )

)

v. ) No. 98--CF--1877  

) 

DOUGLAS I. SCOTT, ) Honorable

 ) Christopher C. Starck,

Defendant-Appellant. ) Judge, Presiding.

                                                                 

JUSTICE GEIGER delivered the opinion of the court:

The defendant appeals from the February 23, 1999, order of the circuit court of Lake County finding him guilty of attempted predatory criminal sexual assault of a child (720 ILCS 5/8--4(a), 12--14.1(a)(1) (West 1998)), attempted aggravated criminal sexual abuse (720 ILCS 5/8--4(a), 12--16(c)(1)(i) (West 1998)), and two counts of attempted indecent solicitation of a child (720 ILCS 5/8--4(a), 11--6 (West 1998)) and sentencing him to 12 years' incarceration.  On appeal, the defendant argues that (1) the trial court erred in denying his motion to suppress statements; (2) the State did not prove him guilty beyond a reasonable doubt of attempted predatory criminal sexual assault; (3) the State did not prove him guilty beyond a reasonable doubt of attempted indecent solicitation of a child; (4) the trial court erred in considering in sentencing a prior conviction that has since been vacated; (5) his sentence was excessive; and (6) the concurrent sentence of 365 days' imprisonment for indecent solicitation of a child was beyond the maximum allowed for a misdemeanor charge.

The charges against the defendant arose from his communications with an undercover Lake County sheriff's detective, Richard White, who met the defendant on the Internet.  At the bench trial, Detective White testified that, on July 13, 1998, he was conducting an investigation on the Internet service provider America Online.  Detective White used the screen name "XradboyX," the profile of which indicated that the user was named "Ricky" and was born on December 12, 1986. On July 13, 1998, Detective White was in a chat room when he received an instant message from the defendant, who was using the screen name "FarWestBoy."  The defendant asked Ricky/XradboyX how old he was.  An Internet instant message conversation then ensued, during which Detective White represented that he was 12 years old, and the defendant indicated that he was 34.

The conversation included references to sexual behaviors.  Detective White and the defendant agreed to meet later that day at a Denny's restaurant.  At the appointed time, Detective White appeared at the location, but the defendant did not.

Detective White testified that, the following day, he received two e-mails from the defendant.  In those e-mails, the defendant apologized for not attending the meeting and expressed his desire to continue the exchange of messages.  When Detective White logged on to America Online, he received an instant message from the defendant.  They engaged in a sexually suggestive computer dialogue for about one hour.  During that conversation, Detective White requested that the defendant send him pictures via e-mail of men engaged in sexual conduct.  The defendant complied with his request and forwarded images of two young males engaged in acts of sexual penetration.  Detective White and the defendant again agreed to meet at the Denny's restaurant.

At the agreed-upon time on July 15, 1998, Lake County detectives arrived at the location.  After the defendant arrived, he approached Detective Manis who had been dressed to attempt to match the description of a 12-year-old boy that Detective White had conveyed to the defendant.  The defendant asked Detective Manis if he was Ricky.  After Detective Manis responded in the affirmative, the defendant stated, "[Y]ou don't look like you're twelve years old."  Police officers then arrested the defendant.

Following his arrest, the defendant was taken to the sheriff's department, where he gave oral and written statements to investigators.  During the interview, the defendant identified himself as FarWestBoy and admitted his understanding that Ricky/XradboyX was 12 years old.  He confirmed that he had driven to the Denny's restaurant to meet Ricky/XradboyX, and that he would have had sex if Ricky/XradboyX had wanted to.

The defendant presented no evidence at the bench trial and moved for a directed verdict.  The trial court found the defendant guilty of attempted predatory criminal sexual assault of a child, attempted criminal sexual abuse, and two counts of attempted indecent solicitation of a child.  The trial court denied the defendant's posttrial motions.

At sentencing on February 23, 1999, the defendant called Reverend Paul C. Meyers in mitigation.  Rev. Meyers testified that he had known the defendant for 16 years and that the defendant was a caring and sensitive person and a committed member of his family.  The defendant's brother, Jonathon Scott, also testified that the defendant was a compassionate person who receives the support of his family.

The trial court sentenced the defendant to 12 years' imprisonment for attempted predatory criminal sexual assault of a child and vacated the judgment on the charge of attempted aggravated criminal sexual abuse.  The trial court also sentenced the defendant to concurrent terms of 365 days' imprisonment on each of the two charges of attempted indecent solicitation of a child.

We first consider the defendant's argument that the trial court's denial of his motion to suppress was manifestly erroneous.  The defendant asserts that the police improperly took his statements after he invoked his right to have an attorney present during questioning.  In addition, the defendant complains that the trial court considered in impeachment a prior conviction of child pornography, which has since been vacated.  According to the defendant, we should disregard the trial court's finding that the testimony from police was more credible because of the trial court's finding that the defendant had been impeached for purposes of the motion hearing.

Under 
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), once a suspect invokes his right to the presence of counsel during interrogation, all questioning must cease until counsel is actually present, unless the suspect initiates further communication.  
Edwards v. Arizona
, 451 U.S. 477, 485, 68 L. Ed. 2d 378, 386-87, 101 S. Ct. 1880, 1885 (1981).  If police continue questioning a suspect after he invokes his right to counsel, any statements made by the defendant may be suppressed.  See 
Edwards
, 451 U.S. at 487, 68 L. Ed. 2d at 387-88, 101 S. Ct. at 1886.  A trial court's decision regarding a motion to suppress statements will not be disturbed unless it is manifestly erroneous.  
People v. Wheeler
, 281 Ill. App. 3d 447, 454 (1996).

Detective White testified during the hearing on the motion to suppress that he read the 
Miranda
 rights to the defendant from a department form and asked the defendant to place his initials next to each paragraph.  When Detective White read the portion of the form pertaining to a waiver of rights, the defendant at first would not initial the form and asked some questions of Detective Lawrence Oliver, who was also questioning the defendant.  At that time, Detective White left the room and Sergeant Kadlec entered the room.  When Detective White returned hours later, the defendant had signed the waiver portion of the form.  Although Detective White did not witness the defendant signing the form, his signature nevertheless appears as a witness to the defendant's signature.  This testimony contradicted the police report in which Detective White had reported that he had actually seen the defendant signing the form.  Detective White also testified that he had signed the form prior to the time that the defendant signed it and that the defendant did not request to speak to an attorney while he was present in the interview room.

The defendant testified for the purpose of the motion to suppress statements.  The defendant testified that he did not agree to sign the waiver portion of the rights form because he had asked for an attorney, and the waiver contradicted his request.  The defendant told Detective White four or five times that he wanted an attorney present before being interviewed.  After Detective White left the room, Detective Oliver told the defendant that it would look better if the defendant made a statement and that the police would attempt to secure help for the defendant.  About one hour after Detective White left the room, the defendant signed the waiver form, was interviewed by Detective Oliver, and gave a handwritten statement.

Detective Oliver testified that the defendant had stated that "he wasn't sure that he could sign the document."  The defendant then asked him whether signing the form would indicate that he was giving up his rights "for good in this case."  Detective Oliver responded in the negative and told the defendant that he could stop the interview at any time and have a lawyer present.  The defendant signed the form and did not ask to speak with a lawyer at any time.

The trial court took judicial notice of the defendant's 1997 conviction in Cook County of possession of child pornography.  On August 14, 1997, the defendant pleaded guilty to a charge of possession of child pornography (720 ILCS 5/11--20.1(a)(6) (West 1996)) in Cook County and was sentenced to 30 months' probation. 
People v. Scott, No. 97--CR--11480 (Cir. Ct. Cook Co.).  The child pornography statute was amended by Public Act 88--680 (Pub. Act  88--680, eff. Jan. 1, 1995).  Public Act 88--680 was held unconstitutional by our supreme court.  See 
People v. Cervantes
, 189 Ill. 2d 80 (1999).  Accordingly, on May 18, 2000, the circuit court of Cook County sustained the defendant's motion to vacate judgment of conviction of possession of child pornography.

In denying the motion to suppress, the trial court found the testimony of the detectives more credible than that of the defendant.  The trial court found, "It's difficult for me to believe that a person who is apparently as intelligent and well spoken as [the defendant] is could be so easily cajoled by the police *** [when] he says he knows his rights."  The defendant emphasizes that, if any testimony was suspect, it was that of Detective White, whose story regarding whether he witnessed the defendant signing the form was somewhat convoluted.  The trial court, however, observed Detective White testify, and it was in a better position than are we to determine whether the testimony was untruthful.  See 
People v. Purchase
, 214 Ill. App. 3d 152, 155 (1991).  There is precious little in the record to suggest that we should disregard the trial court's finding that the defendant was less credible than the police officers.

The defendant, however, suggests that the trial court's finding that he was not credible was based upon the child pornography conviction that has been vacated.  Relying on 
People v. Martin-Trigona
, 111 Ill. 2d 295 (1986), 
the defendant argues that a conviction that is vacated on constitutional grounds cannot be used for impeachment purposes.  The State responds that the reference to the child pornography conviction was harmless error.  We agree.  Upon reviewing the record, it is clear that the trial court never made any specific finding that the defendant was not credible due to the prior conviction.  Indeed, the trial court specifically explained that, considering the defendant's intelligence and familiarity with his right to counsel, it was not persuaded by the defendant's story that he had essentially been fooled by police.  The trial court based its ruling on its view that the testimony of the officers appeared more credible than that of the defendant.  We decline to disturb the trial court's ruling and conclude that the trial court did not err in denying the motion to suppress.

The defendant's next argument on appeal is that the State did not prove him guilty beyond a reasonable doubt of attempted predatory criminal sexual assault of a child (720 ILCS 5/8--4(a), 12--14.1(a)(1) (West 1998)) because the State did not prove either that he possessed the intent to commit an act of sexual penetration with a child or that he took a substantial step toward the commission of the offense.  The State responds that the defendant may be found guilty of the offense of attempt even if the intended victim, a 12-year-old boy, did not in reality exist.

To prove the defendant guilty of attempt, the State is required to establish beyond a reasonable doubt that the defendant intended to commit the offense and that the defendant took a substantial step toward the commission of the offense.  720 ILCS 5/8--4(a) (West 1998); 
People v. Smith
, 148 Ill. 2d 454, 458 (1992).  The impossibility of completing the offense is not a defense.  720 ILCS 5/8--4(b) (West 1998).  A person commits predatory criminal sexual assault of a child if the accused is at least 17 years of age and commits an act of sexual penetration with a victim under 13 years of age.  720 ILCS 5/12--14.1(a)(1) (West 1998).  For the purposes of that offense, sexual penetration is defined as:

"[A]ny contact, however slight, between the sex organ or anus of  one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration."  720 ILCS 5/12--12(f) (West 1998).

In assessing a defendant's argument that the evidence was insufficient to sustain a conviction, it is not the function of this court to retry the defendant.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  Rather, the issue is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Collins
, 106 Ill. 2d at 261.  It is the responsibility of the trier of fact to resolve contradictory evidence and factual disputes and to weigh the credibility of the witnesses.  
People v. Omar
, 281 Ill. App. 3d 407, 412 (1996).

We first address whether any rational trier of fact could have found that the defendant possessed the requisite intent to commit predatory criminal sexual assault of a child.  The intent to commit an offense need not be expressed but may be inferred from the conduct of the defendant and the surrounding circumstances.  
People v. Terrell
, 99 Ill. 2d 427, 431-32 (1984).

The defendant contends that, while the Internet dialogue may have been socially inappropriate, an unambiguous intent to commit a specific offense may not be inferred.  We disagree.  During the defendant's Internet communications with Detective White, he made several references to the possibility that he could "get into trouble" if he were to have sex with Ricky/XradboyX.  At the same time, however, the defendant expressed a desire to meet and become acquainted with him.  He then forwarded to Ricky/XradboyX via e-mail two computer images of nude young males.  One of those images depicts them engaging in anal penetration.  In addition, in his statement to police, the defendant indicated that he would have had sex with Ricky/XradboyX if Ricky/XradboyX had wanted to.  From all the foregoing, the defendant clearly possessed the intent to engage in an act of sexual penetration, as defined in section 12--12(f) of the Criminal Code of 1961 (720 ILCS 5/12-12(f) (West 1998)), with a child under 13 years of age.  See 
People v. Patterson
, 314 Ill. App. 3d 962, 969 (2000).

We now turn to the substantial-step element of the crime.  What constitutes a substantial step toward the commission of an offense is determined by evaluating the facts and circumstances of each particular case.  
Terrell
, 99 Ill. 2d at 433.  It is not necessary that a defendant complete the last proximate act to be convicted of attempt.  
Terrell
, 99 Ill. 2d at 433.  Relying in part on 
People v. Montefolka
, 287 Ill. App. 3d 199 (1997), the defendant reasons that he did not engage in any behavior of a sexual nature such that a trier of fact could conclude that he committed a substantial step towards engaging in an act of sexual penetration with Ricky/XradboyX.

In 
Montefolka
, the court held that the State failed to prove that the defendant had taken a substantial step toward committing aggravated criminal sexual assault even through the defendant broke into the victim's home, restrained her, and told her to take off her underwear.  
Montefolka
, 287 Ill. App. 3d at 202.  This court has recently decided that the holding from 
Montefolka
 does not apply to a case where a person communicated via the Internet with an individual he believed to be a minor child, set up a meeting place, and then drove to that meeting at the appointed time.  See 
People v. Patterson
, 314 Ill. App. 3d at 972.  In 
Patterson
, we held that the defendant's substantial steps were arranging the rendezvous with the intended victim and keeping the appointment by traveling to the meeting at the prearranged time.  
Patterson
, 314 Ill. App. 3d at 972.  We further held that it was not necessary for the defendant to commit an act of a sexual nature with the fictional intended victim in order to find that the defendant had completed a substantial step towards committing sexual abuse of a child.  
Patterson
, 314 Ill. App. 3d at 972.

Moreover, we note that 
Montefolka
 may not be good law.  In 
People v. Hawkins
, 311 Ill. App. 3d 418, 428 (2000), the defendant, relying on 
Montefolka
, argued that he had not taken a substantial step towards committing criminal sexual assault although he had entered the victim's house, sat on her bed, took off his shoes, crawled between the sheets, and announced his objective to "kick it" with her.  The 
Hawkins
 court was unpersuaded by the defendant's arguments that he did not remove any clothing or fondle the victim, and it affirmed his conviction of attempted criminal sexual assault. The court further noted that 
Montefolka
 erroneously focused on the fact that there were additional steps the defendant could have taken to bring him within the ambit of having completed a substantial step.  In addition, the court looked to the Model Penal Code for guidance in determining whether the defendant had committed a substantial step.  
Hawkins
, 311 Ill. App. 3d at 424.  The Model Penal Code lists types of conduct that shall not, as a matter of law, be held insufficient to support an attempt conviction, so long as the act is strongly corroborative of the actor's criminal purpose.  The list includes " 'enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission.' " 
Hawkins
, 311 Ill. App. 3d at 424, quoting  Model Penal Code §5.01(2) at 296 (1985).

In this case, we similarly hold that the defendant completed  a substantial step towards the commission of predatory criminal sexual assault.  The defendant engaged in two distinct acts leading to the commission of sexual conduct with Ricky/XradboyX.  The first was the Internet communication in which he enticed Ricky/XradboyX to  meet with him.  The second was driving to the agreed-upon location for the meeting.  We agree with the defendant that Internet communication, standing alone, is insufficient to find that the defendant had committed a substantial step towards committing predatory sexual acts with a minor.  What we are necessarily concerned with is whether the communications, coupled with the defendant's act of driving to the agreed-upon location, constitute a substantial step.  In this regard, the trial court found as follows:

"[I]t is more than just a fantasy transmission over the electronic media of thoughts and desires.  A child was solicited in the defendant's mind, a date was made, and he drove to meet the person to carry out the purposes of that *** encounter. *** And if this had not been a police officer but had been a 12 year old child *** that this defendant would indeed have gone forward and had sex with him at that time."

We see no basis to conclude that a rational trier of fact could not have found that the defendant had committed a substantial step and had possessed the requisite intent.  See 
Patterson
, 314 Ill. App. 3d at 971; see also 
United States v. Miller
, 102 F. Supp. 2d 946, 947-49 (N.D. Ill. 2000).
  Therefore, we affirm the judgment of the trial court finding the defendant guilty of attempted predatory criminal sexual assault of a child.

The defendant's next argument is that his conviction of attempted indecent solicitation of a child (720 ILCS 5/8--4(a), 11--6 (West 1998)) must be reversed because and amendatory act to the statute he was convicted of has since been held unconstitutional. The solicitation statute was amended by Public Act 89--203 (Pub. Act 89--203, eff. July 21, 1995) to include the word "computer" in the definition of the term "solicits" as follows:

"(d) For the purposes of this Section, "solicits" includes but is not limited to oral or written communication and communication by telephone, 
computer
, or other electronic means."  (Emphasis added.) 720 ILCS 5/11--6(d) (West 1998).

Our supreme court held Public Act 89--203 unconstitutional because it violated the single subject rule.  See 
People v. Wooters
, 188 Ill. 2d 500, 520 (1999).  When a public act that amends a criminal statute is declared unconstitutional as violating the single subject rule, the effect is to leave the law in force as it was before the public act was effective.  See 
People v. Young
,  312 Ill. App. 3d 428, 433 (2000).  As such, we must consider whether the solicitation statute, as it read prior to the enactment of Public Act 89--203, may be violated when a person solicits a minor via computer.

Citing 
People v. Nunn
, 77 Ill. 2d 243, 248 (1979), the defendant argues that the fact of the amendment creates a presumption that the legislature intended to change the law as it previously existed and, therefore, that the prior version of the solicitation statute is not violated if the accused solicits via computer.  We are unpersuaded by this argument.  We first note that 
Nunn
 qualified its holding by stating that the presumption is not controlling and may be overcome by "other considerations."  
Nunn
, 77 Ill. 2d at 248.  In this case, there is no indication that the prior version was limited to solicitation via a particular mode.  The legislature may have added the word "computer" in response to public concerns over the increasing presence of children on the Internet and not because the prior version of the statute was somehow inadequate.  We are persuaded that the types of communication that occurred in this case are precisely the kind of predatory influences that the legislature intended with the prior version of the solicitation statute.  See 
United States v. Hockings
, 129 F.3d 1069, 1072 (9th Cir. 1997).  Therefore, we decline to reverse the defendant's conviction on the ground that Public Act 89--203 was held unconstitutional.

The defendant also argues that the conviction of solicitation cannot stand because the evidence introduced at trial does not demonstrate that the defendant solicited an act of sexual penetration.  According to the defendant, the computer exchanges did not include any request for, or statement in expectation of,  sexual penetration.  As noted above in our discussion of the conviction of attempted predatory criminal sexual assault, we believe that the photographs, which leave little to the imagination, coupled with the defendant's comments regarding the meeting for sex, clearly constitute a request that Ricky/XradboyX have sex with him.  Therefore, we affirm the defendant's conviction of attempted indecent solicitation of a child.

The defendant next argues that the trial court erred in sentencing him to 365 days' imprisonment on the misdemeanor charges of attempted indecent solicitation of a child (720 ILCS 5/8--4(a), 11--6 (West 1998)).  The State agrees that a term of imprisonment for a Class A misdemeanor is limited to less than one year.  See 730 ILCS 5/5--8--3(a)(1) (West 1998).  Pursuant to Supreme Court Rule 615(b)(4), this court has the power to reduce a sentence.  134 Ill. 2d R. 615(b)(4).  Accordingly, we reduce the defendant's sentence on the misdemeanor charges of attempted indecent solicitation of a child to 364 days.  See 
People v. Gentry
, 48 Ill. App. 3d 900, 907 (1977).  

The defendant's final two arguments concern the 12-year sentence of imprisonment for attempted predatory criminal sexual assault of a child.  The defendant argues that he is entitled to a new sentencing hearing because the trial court considered in aggravation a prior conviction of child pornography, which has since been vacated.  We agree that, because the trial court specifically cited the prior conviction and not the defendant's prior act itself as a factor in aggravation, the defendant is entitled to a new sentencing hearing.  See 
People v. McCain
, 248 Ill. App. 3d 844, 853 (1993).  As the cause is remanded for a new sentencing hearing, it is not necessary for us to address the defendant's argument that the 12-year sentence was excessive because there was no real victim.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part as modified and vacated in part, and the cause is remanded.

Affirmed in part as modified; vacated in part; cause remanded.

COLWELL and RAPP, JJ., concur.