IN THE CASE OF


UNITED STATES, Appellee

v.

Kent D. IRVIN, Master Sergeant
U.S. Air Force, Appellant

No. 03-0224

Crim. App. No. 34756

United States Court of Appeals for the Armed Forces

Argued March 2, 2004

Decided June 10, 2004

ERDMANN, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Major Andrew S. Williams (argued); Colonel
Beverly B. Knott, Major Terry L. McElyea and Captain Diane M.
Paskey (on brief).

For Appellee:  Captain Michelle M. Lindo (argued); Colonel
LeEllen Coacher and Lieutenant Colonel Robert V. Combs (on
brief).

Military Judge:  Thomas W. Pittman


  **This opinion is subject to editorial correction before final publication**.

Judge ERDMANN delivered the opinion of the Court.

Master Sergeant Kent D. Irvin entered a guilty plea and was convicted by a general court-martial of wrongfully and knowingly possessing visual depictions of minors engaging in sexually explicit conduct in violation of clauses 1 and 2 of Article 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 934 (2000). He was sentenced by a panel of officer and enlisted members to a bad-conduct discharge, confinement for one year and reduction to the lowest enlisted grade.

Although not raised by Irvin as part of his appeal, the Air Force Court of Criminal Appeals assessed the providence of his guilty plea in light of the Supreme Court's decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002). After concluding that Free Speech Coalition did not affect Irvin's guilty plea, the Court of Criminal Appeals affirmed the conviction and sentence.

Irvin petitioned this Court for review of his case without assigning any specific errors in the proceedings below. In April 2003, we specified the following issue for review:

> WHETHER APPELLANT'S PLEAS OF GUILTY TO POSSESSING
> CHILD PORNOGRAPHY IN VIOLATION OF ARTICLE 134,
> UCMJ, SHOULD BE SET ASIDE IN LIGHT OF ASHCROFT v.
> FREE SPEECH COALITION, 122 S.Ct. 1389 (2002).

In November 2003, we specified a second and more narrowly defined issue for review:

United States v. Irvin, No. 03-0224/AF

> WHETHER THE POSSESSION OF VISUAL DEPICTIONS OF MINORS
> ENGAGING IN SEXUALLY EXPLICIT CONDUCT CAN SERVE AS THE
> BASIS FOR A CONVICTION UNDER CLAUSE 1 OR CLAUSE 2 OF
> ARTICLE 134 IN LIGHT OF ASHCROFT V. FREE SPEECH COALITION,
> 535 U.S. 234 (2002) AND UNITED STATES V. O'CONNOR, 58 M.J.
> 450 (C.A.A.F. 2003).

After reviewing both issues, we conclude that Irvin's guilty plea is provident and is not affected by Free Speech Coalition or our decision in O'Connor.

DISCUSSION

A.   Standard of Review

The case is focused solely on the providence of Irvin's guilty plea.  For this Court to reject a guilty plea on appellate review, the record of trial must show a substantial basis in law and fact for questioning the plea.  United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F. 2002)(citing United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)).

B.   The Providence Inquiry and Record of Trial

At the time of the offense in question, Irvin was attached to a NATO AWACS squadron at Geilenkirchen Air Base, Germany. The visual depictions that form the basis for his conviction were lawfully seized from his off-base residence in Hearen, Germany, in late August 2000 by agents of the Air Force Office of Special Investigations.

Prior to accepting the plea, the military judge advised Irvin of the "elements" of the offense with which he was charged:

3

      (1) That, at or near, Geilenkirchen NATO Air Base, Germany, on divers occasions between on or about 2 January 2000 and on or about 29 August 2000, [Irvin] wrongfully and knowingly possessed visual depictions of minors engaging in sexually explicit conduct.

      (2) That under the circumstances, [Irvin's] conduct was to the prejudice of good order and discipline, or of a nature to bring discredit upon the Armed Forces.

He further advised Irvin that, while almost any irregular or improper act on the part of a service member could be regarded as prejudicial to good order and discipline in some indirect or remote sense, only those acts where the prejudicial effect is reasonably direct and palpable are punishable under Article 134. See Manual for Courts-Martial, United States (2002 ed.) [MCM], Part IV, para. 60.c.(2)(a). He provided the same explanation with respect to the service-discrediting element, i.e., that almost any irregular or improper act could be regarded as service discrediting in some direct or remote sense, but only those acts which tend to bring the service into disrepute or tend to lower it in the public esteem are punishable. Id. at Part IV, para. 60.c.(3).

The specific "act" that Irvin pleaded guilty to was the possession of "visual depictions of minors engaging in sexually explicit conduct." The military judge explained that particular element to Irvin and provided him with definitions of "visual depiction," "minor" and "sexually explicit conduct."

The specific factual circumstances of Irvin's conduct were outlined through both a stipulation of fact and an extensive colloquy with the military judge. Irvin admitted to downloading certain images of young girls engaged in sexually explicit conduct from the Internet to his personal computer at his residence. He further admitted to printing some of those images and to downloading approximately 80 images to various types of computer storage media.

Irvin advised the military judge that he knew "that it is wrong for an older person to look at minors either nude or partially clothed." He acknowledged to the military judge that there was "no doubt in [his] mind" that the individuals in the images were minors and that there was "no doubt in [his] mind" that they were engaged in sexually explicit conduct. Finally, he also acknowledged that he knew that the visual depictions "were, in fact, minors engaging in sexually explicit conduct."

Irvin admitted in his stipulation that his possession of the images was prejudicial to good order and discipline or service-discrediting. He was also specifically asked by the military judge to explain why his conduct was either prejudicial to good order and discipline or service-discrediting. Their subsequent discussion directly focused on the impact of his conduct on good order and discipline and on community perception of the military.

C.    The Impact of Free Speech Coalition and O'Connor

The specified issues ask whether the Supreme Court's decision in Free Speech Coalition and our subsequent decision in O'Connor create a substantial basis for questioning Irvin's guilty plea.  We conclude they do not.

That conclusion is driven by a critical distinction that was properly noted by the Court of Criminal Appeals.  Although both the present situation and O'Connor involve guilty pleas to charges of possessing certain visual images in violation of Article 134, the criminal nature of the conduct in each case is measured by different yardsticks.  In O'Connor the issue concerned the providence of a guilty plea to a charge of violating clause 3 of Article 134, i.e., of committing a "crime or offense not capital."  58 M.J. at 452.  In the present case, however, Irvin was charged with violating clauses 1 and 2 of Article 134, i.e., of engaging in conduct prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces.

The criminal nature of the conduct at issue in O'Connor derived from a violation of the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. § 2252A (2000).  58 M.J. at 452.  That separate federal statute was the subject of the Supreme Court's decision in Free Speech Coalition, where the Court struck down portions of its definition of "child pornography" as

United States v. Irvin, No. 03-0224/AF

unconstitutionally overbroad.  Id. (citing Free Speech Coalition, 535 U.S. at 256, 258).  We did not view O'Connor's plea to violating that federal statute as provident where the unconstitutional definition had been used during the plea colloquy and the record contained no discussion or focus on those aspects of the statute that had been upheld by the Supreme Court.  Id. at 454.

The criminal nature of the conduct in the present case, however, does not derive from a clause 3, Article 134 charge specifying a violation of the CPPA.  Irvin was charged under clauses 1 and 2 of Article 134 with engaging in conduct prejudicial to good order and discipline or of a nature to bring discredit to the armed forces by wrongfully and knowingly possessing "visual depictions of minors engaging in sexually explicit conduct."  Thus, the providence of his guilty plea must be assessed against the elements of that offense, not the elements of the CPPA offense at issue in O'Connor and Free Speech Coalition.

Applying that yardstick, we find no substantial basis in law or fact to question the providence of Irvin's plea. In advising Irvin of the elements of the clauses 1 and 2 Article 134 offense, the military judge did not make any reference to the terms struck down as constitutionally overbroad in Free

7

United States v. Irvin, No. 03-0224/AF

Speech Coalition.[*]  The criminal offense that was explained to

Irvin and to which he pleaded guilty did not include a reference

to visual depictions that "appear to be" of a minor engaging in

sexually explicit conduct, or materials that were pandered in a

manner that "conveys the impression" that they include visual

depictions of minors engaging in sexually explicit conduct.  58

M.J. at 452 (describing portions of the CPPA struck down in Free

Speech Coalition).

The offense that the military judge explained to Irvin and

to which he pleaded guilty was drawn strictly in terms of

"visual depictions of minors engaging in sexually explicit

conduct."  Also, Irvin's explanation to the military judge was

not cast in terms of images that "appeared to be" child

pornography as was the case in O'Connor, but rather in terms of

visual depictions that he knew "were, in fact, minors engaging

in sexually explicit conduct."  It is these critical aspects of

how Irvin's case was charged and pleaded to that avoids any

impact from Free Speech Coalition or our decision in O'Connor.

---

[*] The military judge's definition of "visual depiction" consisted
of a blend of the definition of "visual depiction" contained at
18 U.S.C. § 2256(5) (2000) and the opening language from the
definition of "child pornography" at § 2256(8).  Similarly, the
definition he gave to Irvin of "sexually explicit conduct" was
drawn from the definition of that term as contained at §
2256(2).  None of these definitions were invalidated by Free
Speech Coalition.

8

That leaves only the issue of whether a substantial basis exists for questioning Irvin's plea to either the prejudicial to good order and discipline or service-discrediting elements of clauses 1 and 2. Irvin admitted in his stipulation of fact and during his colloquy with the military judge to downloading and possessing the images at issue and agreed that he "knew that the visual depictions were, in fact, minors engaging in sexually explicit conduct." He also admitted in his stipulation and during his colloquy with the military judge that his conduct was prejudicial to good order and discipline and service-discrediting, including responses to a specific request from the military judge to explain why his conduct met those elements.

We have in the past affirmed convictions for a lesser-included offense under clause 2 of Article 134 for the "possession of images depicting sexually explicit conduct by minors." United States v. Sapp, 53 M.J. 90, 92 (C.A.A.F. 2000). See also United States v. Augustine, 53 M.J. 95 (C.A.A.F. 2000). Although couched as a primary offense rather than a lesser-included one, the conduct for which Irvin stands convicted is cast in terms identical to the conduct at issue in Sapp and Augustine. As in those cases, Irvin admitted to and discussed with the military judge the character of his conduct as service-discrediting and prejudicial to good order and discipline. Under these circumstances, the record reflects no substantial

basis in law or fact for questioning the providence of his guilty plea.

## CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.