**UNITED STATES**

v.

**Harold M. WHITE, Jr., Chief Yeoman (E–7), U.S. Navy.**

**NMCCA 200301523.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 9 Oct. 2002.

Decided 18 Jan. 2006.

Lt Anthony Yim, JAGC, USNR, Appellate Defense Counsel.

Lt Steven Crass, JAGC, USNR, Appellate Government Counsel.

Before RITTER and SCOVEL, Senior Judges, and GEISER, Appellate Military Judge.

GEISER, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of carnal knowledge, oral sodomy, indecent acts, indecent language, and communicating a threat, in violation of Articles 120, 125, and 134, Uniform Code of Military

Justice, 10 U.S.C. §§ 920, 925, and 934. The appellant was sentenced by officer members to a dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged but suspended confinement in excess of 20 months for a period of 24 months from the date of trial and suspended both the adjudged and the automatic reductions below pay grade E–3 for a period of 20 months from the date of the convening authority's action (CAA).

The appellant asserts four assignments of error arguing that: (1) his plea to communication of indecent language to a female under the age of 16 was improvident; (2) his plea to communication of a threat to injure the reputation of a female under the age of 16 was improvident; (3) the military judge erred in permitting the victim to testify on sentencing that the appellant took her virginity; and (4) the promulgating order misstates the appellant's pleas to Specifications 1 and 2 of Charge III.[1]

After carefully considering the record of trial, the appellant's four assignments of error, and the Government's response, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Communication of a Threat to Injure Reputation

The appellant contends that his guilty plea to threatening to reveal the sexual activities of a 15–year–old girl to "her parents, her boyfriend's parents and/or anyone else who would listen" was improvident. Citing *United States v. Frayer*, 29 C.M.R. 416, 1960 WL 4526 (C.M.A.1960), the appellant acknowledges that "injury" includes harm to a person's reputation but he argues that his threat could not be wrongful if he believed the information in question to be true. Appellant's Brief of 30 Nov 2004 at 11. While the appellant correctly notes that the offense in

*Frayer* involved a threat to communicate false information, he assumes incorrectly that such falsity is a per-se requirement in all such cases.

 In order to reject a guilty plea on appellate review, the record must show a substantial basis in law and fact for questioning the plea. *United States v. Irvin*, 60 M.J. 23, 24 (C.A.A.F.2004)(citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F.2002)). In the absence of military case law on point, the appellant encourages this court to adopt a civil law libel and defamation-type analysis that incorporates truth as a defense. We decline to do so.

While there are no military cases directly on point, our review of the case law suggests that our focus should be on the purpose and intent underlying the threat as opposed to the truth or falsity of the threat itself. In *United States v. Schmidt*, 36 C.M.R. 213, 1966 WL 4447 (C.M.A.1966), the court overturned the conviction of an Army private charged with both extortion and wrongful communication of a threat. The private sent a memo to his commanding officer threatening to forward a letter to a local newspaper detailing mistreatment the private believed he received in retaliation for a prior communication to his Senator about command deficiencies. The court's analysis was silent with respect to the truth or falsity of the private's allegations but instead focused on the rationale behind the threat. While noting that the reason for communicating a threat is normally not a defense, the court observed that " '[c]onduct takes its legal color and quality more or less from the circumstances surrounding it, and the intent or purpose which controls it, and the same act may be lawful or unlawful as thus colored and qualified.' " *Id.* at 216 (quoting *People v. Hughes*, 137 N.Y. 29, 32 N.E. 1105, 1107 (1893)).

More recently, in *United States v. Murray*, 43 M.J. 507 (A.F.Ct.Crim.App.1995), the Air Force court held that a threat to kill someone communicated in lawful self-defense or in defense of another is for a legitimate

---

1. The appellant's request for oral argument on his second and third assignments of error is denied.

purpose and is not wrongful for purposes of proving the offense of communicating a threat. The Army court in *United States v. Greer*, 43 C.M.R. 801, 1971 WL 12889 (A.C.M.R.1971), similarly focused on the accused's intent, holding that in order for communication of a threat to be unlawful, there must be evidence of a "wrongful intent." In *United States v. Sulima*, 29 C.M.R. 446, 1960 WL 4529 (C.M.A.1960), our superior court observed that it is not wrongful for a creditor's agent to tell a serviceman-debtor that he will tell the debtor's commanding officer of an outstanding debt. The court describes this as a "well-recognized legal method of collecting an admitted debt." *Id.* at 451. Similar to the cases cited above, the court at least implicitly focused on the motive underlying the communication to determine whether the threatened disclosure was lawful.

Disclosing true information for an illicit motive is recognized as a crime under Article 127, UCMJ, 10 U.S.C. § 927, which addresses the offense of extortion. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.), Part IV, ¶ 53c(1). This provision defines a "threat" affecting the person broadly to include a communication "to expose any secret threatened or any member of that person's family or any other person held dear to that person. . . ." *Id.* at ¶ 53c(2). While the appellant in the instant case was not charged under Article 127, UCMJ, the weight of case law suggests that an analysis of wrongfulness tied to the underlying motive behind a communication is the same when a threat is charged under Article 134, UCMJ, 10 U.S.C. § 934.

The appellant's citation to civil defamation and libel law authorities is misplaced. The legal analysis proffered by the appellant implicates the unavoidable tension between a person's reputation and right to privacy, and the public's interest in maintaining free and open debate on the issues of the day. Balancing where and when a beneficial individual right must give way to a similarly beneficial social need is quite different from the instant criminal case.

█ In the instant case, the appellant acknowledged during the providence inquiry that he threatened to disclose embarrassing information about his 15–year–old victim's sexual relations to her parents, her boyfriend's parents and "anyone else who would listen." Record at 77. The appellant further stated during the providence inquiry that the purpose of this communication was to frighten the victim into silence about their sexual involvement. The appellant's motive for making the communication rendered the threat wrongful and illegal. We hold that communicating a threat is "wrongful" under Article 134, UCMJ, when the motive for the communication is unlawful. We further hold that there is no substantial basis in law or fact to question the providence of appellant's guilty plea to Specification 3 of Charge III.

## Indecent Language

The appellant contends that his guilty plea to communicating indecent language on divers occasions over a six-month period to a female under the age of 16 was improvident. His argument focuses primarily on the words contained in his 15 June 2000 e-mail to the victim, which he asserts were communicated "in anger." He avers that the words contained in the remainder of his e-mails to the victim over the six-month period were not intended to "solicit future sexual acts." Appellant's Brief at 5. The appellant argues that a communication cannot be "indecent" under Article 134, UCMJ, absent a sexual context. He requests that we dismiss Specification 2 of Charge III.

█ As noted above, in order to reject a guilty plea on appellate review, the record must show a substantial basis in law and fact for questioning the plea. *Irvin*, 60 M.J. at 24 (citing *Jordan*, 57 M.J. at 238). We concur with the appellant that for a communication to violate the Article 134, UCMJ, prohibition against use of "indecent language," such communication must have been intended to "incite lustful thought" or otherwise be reasonably "calculated to corrupt morals or excite libidinous thoughts." *United States v. Brinson*, 49 M.J. 360, 364 (C.A.A.F.1998)(quoting *United States v. French*, 31 M.J. 57, 60 (C.A.A.F.1990)). We do not concur, however, that such communication must solicit a future sexual act as argued by the appellant. It is enough that

the communication incite lustful thoughts or be calculated to corrupt morals or excite libidinous thoughts.

The appellant asserts that the military judge never inquired whether his 15 June 2000 e-mail to the victim was "motivated by anger or lust." Appellant's Brief at 3. We agree that the military judge should have inquired further into the appellant's motivation behind the specific words contained in the 15 June 2000 e-mail, which are cited in the specification. We will grant appropriate relief in our decretal paragraph.

■ It is clear, however, that words communicated in the appellant's various other prior e-mails to the victim sent between January and June 2000 were not sent in anger and were of a nature to "incite lustful thought" or otherwise were "reasonably calculated to corrupt morals or excite libidinous thoughts." We further note that the appellant expressly agreed during the providence inquiry that his e-mails to the victim, taken together, specifically discussed "acts of sexual intercourse and oral sodomy." Record at 66. Viewed in the context of the entire record, the six-month body of appellant's e-mail communications to the victim easily meets the standard of indecency articulated by our superior court. Prosecution Exhibit 1. We hold, therefore, that there is no substantial basis in law or fact to question the providence of the appellant's guilty plea to Specification 2 of Charge III.

## MILITARY RULE OF EVIDENCE 412

■ The appellant asserts that the military judge erred in permitting the victim to testify at sentencing that the appellant had taken her virginity. He cites the plain language and legislative history of MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.). In pertinent part, MIL. R. EVID. 412 provides that, in cases alleging "nonconsensual sexual offenses," evidence is not admissible to prove any alleged victim "engaged in other sexual behavior" or in order to prove any alleged victim's "sexual predisposition."

2. The military judge held that evidence of the victim's virginity was not evidence that she en-

The military judge and counsel engaged in an extended colloquy on the law and its rationale. Notwithstanding defense arguments, the military judge determined that evidence of the victim's virginity at the time of the offenses did not implicate either prong of MIL. R. EVID. 412.[2] The military judge also determined the victim's loss of her virginity was a direct result of the appellant's misconduct and, therefore, a proper matter in aggravation under RULE FOR COURTS-MARTIAL 1001(a)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2002 ed.). We review a military judge's decision to include or exclude evidence under MIL. R. EVID. 412 for an abuse of discretion. *United States v. Banker*, 60 M.J. 216, 223 (C.A.A.F.2004).

Applying that standard, we concur with the military judge's analysis and decision. We note that the victim's testimony about the appellant taking her virginity was not offered to prove either that she engaged in other sexual behavior or that she had a particular sexual predisposition. We also note that the military judge ascertained on the record that both the minor victim and her mother wanted the information about her virginity to be considered by the members. He also permitted the defense wide latitude to challenge the veracity of the victim on this point to include reference to the victim's prior sexual activities, if any existed. We further find that the wide latitude provided the defense regarding cross-examination and submission of impeachment evidence on this point eliminated any potential prejudice to the appellant's substantial rights. We hold that the military judge did not abuse his discretion when he allowed the victim to testify at sentencing that the appellant had taken her virginity.

### Conclusion

We have considered the appellant's fourth assignment of error, raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find it to be without merit. The finding of guilty to the words "by calling [victim] a 'sick c——,' or words to that effect;"

gaged in other sexual behavior or that she had a particular sexual predisposition.

in Specification 2 of Charge III is dismissed. The findings of guilty to the remainder of Specification 2 of Charge III and to the remaining charges and specifications are affirmed. We have reassessed the approved sentence. After reviewing the entire record, we specifically conclude that the approved sentence is appropriate for this offender and his offenses and it is affirmed. *United States v. Cook*, 48 M.J. 434 (C.A.A.F.1998); *United States v. Peoples*, 29 M.J. 426, 428 (C.M.A.1990); *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A.1986).

Senior Judge RITTER and Senior Judge SCOVEL concur.